S. 115–130, 35 Sup. Ct. 255, 260 (59 L. Ed. 492). The Supreme Court in the opinion say:

"Subject to exceptions, not material here, every state has the undoubted right to provide for service of process upon any foreign corporations doing business therein, to require such companies to name agents upon whom service may be made, and also to provide that in case of the company's failure to appoint such agent, service, in proper cases, may be made upon an officer designated by law. Mutual Reserve Ass'n v. Phelps, 190 U. S. 147 [23 Sup. Ct. 707, 47 L. Ed. 987]; Mutual Life Ins. Co. v. Spratley, 172 U. S. 603 [19 Sup. Ct. 308, 43 L. Ed. 569]. But this power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the jurisdiction of the state enacting the law. Otherwise, claims on contracts wherever made and suits for torts wherever committed might by virtue of such compulsory statute be drawn to the jurisdiction of any state in which the foreign corporation might at any time be carrying on business. The manifest inconvenience and hardship arising from such extraterritorial extension of jurisdiction, by virtue of the power to make such compulsory appointments, could not defeat the power if in law it could be rightfully exerted. But these possible inconveniences serve to emphasize the importance of the principle laid down in Old Wayne Life Association v. McDonough, 204 U. S. 22 [27 Sup. Ct. 236, 51 L. Ed. 345], that the statutory consent of a foreign corporation to be sued does not extend to causes of action arising in other states."

I am not unmindful that our Court of Appeals in Grant v. Cananea Con. Copper Co., 189 N. Y. 241, 82 N. E. 191, in consideration of section 1780 of the Code of Civil Procedure, said that the "provisions" thereof "are violative of no provision of the federal Constitution to which our attention has been called, nor do they conflict with the federal authorities upon the subject." Although the respondent in Grant's Case, supra, made the point of conflict with the Fourteenth Amendment, it could not, of course, cite Simon's Case, supra, decided in 1914, because Grant's Case, supra, was decided in October, 1907, and did not cite Old Wayne Life Association v. McDonough (cited in Simon's Case, supra), which was not argued until October, 1907. Unless I mistake, we have now an authority which is supreme. Cook v. Moffat, 5 How. 295, 12 L. Ed. 159.

The order is affirmed, with $10 costs and disbursements. All concur.

---

### In re SELIGMANN'S ESTATE.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. TAXATION &#x229C;887—TRANSFER TAXES—ESTATES TAXED—WHEN PAYABLE.

A will devised property in trust, to be paid to the sons of the testator in three equal installments on their each reaching the ages of 21, 25, and 30 years, and gave each a temporary life estate in each installment pending attainment of the respective ages, but provided for substitution of their heirs, should they predecease the testator or die before attaining any one of the three ages. The life estates were assessed at approximately $12,000 in value in each case on the installments due, and the remainders at $55,000. The tax was paid on the life estates after judicial valuation, but not on the remainders. When the remainders fell due the beneficiaries, the comptroller sought to collect the transfer tax on the whole installment without deduction. *Held* that, under Transfer Tax Law

(Consol. Laws, c. 60) § 230, the tax was collectible on the whole installment, without deduction for the life estate on which the tax had already been paid; it being immaterial that the remainderman was also the life tenant.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1709; Dec. Dig ☞887.]

2. WILLS ☞634—VESTED ESTATES.

A bequest to testator's son, to be paid by the trustee in three equal installments when the son reached the ages of 21, 25, and 30 years, and in the event of his death prior to the accrual of an installment the part unpaid should go to the son's heirs, did not create a vested estate with payment alone postponed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. ☞634.]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the transfer tax on the estate of Maurice Seligmann, deceased. Proceeding by the Comptroller of the State of New York against Elias Asiel and another, as trustees under the will of the decedent. From an order of the Surrogate's Court fixing the transfer tax, the Comptroller appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Schuyler C. Carlton, of New York City, for appellant.
Abraham L. Gutman, of New York City, for respondents.

SCOTT, J. The will of Maurice Seligmann, deceased, was admitted to probate on April 24, 1908. By the second clause of his will he gave all of his residuary estate to his executors in trust to convert the same into money, and to divide it into two equal portions. As to one of said portions, he directed his executors to dispose thereof as follows:

"(2) And as to the other equal portion of my residuary estate, to allot the same in equal shares to my children me surviving and to the then surviving issue of any deceased child of mine, such issue taking their share their parent would, if then living, have been entitled to; and as to the share allotted to such issue, to pay over such share to such issue; and as to the share allotted to each child of mine, to invest the same as provided in paragraph fourth of my will, and to pay such share to such child as follows: One-third of such share upon such child's attaining the age of twenty-one years; one-third thereof upon its attaining the age of twenty-five years, and the remaining one-third upon its attaining the age of thiry years, and until the whole of such share shall have been paid to such child as aforesaid, the net income of such share, or so much thereof as shall remain unpaid, shall be paid to such child; and in case of such child dying before the whole of such share shall have been paid to it, then such share or so much thereof as shall remain unpaid, shall be disposed of as such child shall by its last will direct, and in default of any such testamentary disposition, then the same shall be paid to the then surviving issue of such child and in default of any such issue then surviving, then the same shall be paid to the then surviving brothers and sisters of such child and the then surviving issue of any deceased brother or sister, such issue taking by representation the share their parent would, if then living, have been entitled to; and in default of any brother or sister or issue

of any deceased brother or sister of such child then surviving, then such share or the residue thereof shall be paid to my then surviving heirs under the present New York statute of descent."

Transfer tax proceedings were had upon the estate of the deceased, and the appraiser's report was filed November 29, 1909; the original taxing order being entered December 27, 1909. The surviving children of Maurice Seligmann were two sons, George A. Seligmann and Arthur R. Seligmann. At the date of death George A. was over 21 years, but under 25 years, and Arthur R. was a minor, under 21 years of age. George A. became 25 September 25, 1912, and Arthur R. became 21 November 19, 1914.

By the report of the appraiser it appears that each installment due each brother, respectively, at the ages of 21, 25, and 30, was the sum of $70,573.43. The second installment of George A.'s bequest amounting to $70,573.43, and an equal amount, being the first installment of Arthur R.'s bequest, have now fallen due, and this proceeding was brought to fix, and concerns only, the tax on these installments.

At the time of the appraisal, the value of George A.'s temporary life estate in the installment due when he should become 25 was fixed at $12,335 by the appraiser, and the value of the remainder was fixed at $55,805. The first installment of Arthur R.'s bequest was appraised as follows: "Present value, $17,542; and remainder, $50,846." Taxes were paid at the time on the original taxing order on the present values of the temporary estates in these two funds, but taxation on the remainder was suspended on account of the contingencies provided by the will, which defeated the shares of the two brothers in case of death, respectively, before arriving at the ages of 21 and 25.

By the order appealed from the tax is imposed upon $55,805 in the case of George A. and $50,590 in the case of Arthur R. The comptroller contends that the amount subject to taxation is the full, undiminished value of the remainder, being $70,573.43 in each case. The basis of the comptroller's contention is section 230 of the Transfer Tax Law, which provides:

"Estates in expectancy which are contingent or defeasible and in which proceedings for the determination of the tax have not been taken or where the taxation thereof has been held in abeyance, shall be appraised at their full, undiminished value when the persons entitled thereto shall come into the beneficial possession or enjoyment thereof, without diminution for or on account of any valuation theretofore made on the particular estates for the purpose of taxation, upon which said estates in expectancy may have been limited."

[1] The case at bar seems to fit the words of the statute. What each son received as to each installment of the amount "allotted" to him was what the appraiser and the appellant call a "temporary life estate," to be followed by a gift of the whole share when and if he attains the specified age. If he dies earlier, the share goes to others, who would take, not through him, but directly under the will of the testator. He therefore receives as to each share a present temporary life estate, with a remainder contingent upon his living until the prescribed age. It is significant that the will contains no words of gift to either son, except in the direction to the trustees to pay over to him

on his attainment of the prescribed ages. Until then the whole estate is in the trustees, the son having no right except to receive the income. What was valued by the appraiser in 1909 and was taxed by the court was not the son's contingent or prospective inheritance of the corpus of the share allotted to him, but was the estimated value of his temporary life estate, an estate or interest quite apart from his expectant remainder. The report of the appraiser that $55,805 was the value of the remainder interest of George A. Seligmann, to take one instance, was not confirmed by the surrogate's order fixing the tax on the temporary life estate, was not within the scope of the matters submitted to the appraiser for determination, and may be disregarded. Matter of Naylor, 120 App. Div. 738, 105 N. Y. Supp. 667, affirmed 189 N. Y. 556, 82 N. E. 1129.

If the remainderman were some one other than the temporary life tenant, I assume that no question would be made as to the liability of the remainder for assessment at its full, undiminished value. I cannot see that any different rule is to be applied because the temporary life tenant and the remainderman happen to be the same person.

[2] The only theory upon which a different appraisement can be made is that the share of each son was given to him outright at the testator's death, payment merely being postponed. Not only is this theory contrary to the terms of the will, but it is inconsistent with the order of December 27, 1909, which proceeded upon the theory that the sons received at the death of the testator only temporary life estates. In my opinion, the state comptroller's contention is sound and that the remainders should be assessed at their full, undiminished values.

The order appealed from must therefore be modified in accordance with the views herein expressed, and, as modified, affirmed. Settle order on notice.

LAUGHLIN and DOWLING, JJ., concur. INGRAHAM, P. J., and McLAUGHLIN, J., dissent.